## REDACTED OPINION

# In the United States Court of Federal Claims

No. 14-822C
Filed: November 25, 2014
Redacted Version Issued for Publication: December 5, 2014[1]

```
* * * * * * * * * * * * * * * * *
                                  *
BANNUM, INC.,                     *
                                  *
          Protestor,              *
                                  *
     v.                           *
                                  *
UNITED STATES,                    *
                                  *   Bid Protest; Motion for Judgment on
          Defendant,              *   the Administrative Record; Best
                                  *   Value.
     v.                           *
                                  *
ALSTON WILKES SOCIETY,            *
                                  *
          Defendant-Intervenor.   *
                                  *
* * * * * * * * * * * * * * * * *
```

**Justin T. Huffman** and **Joseph A. Camardo, Jr.**, Camardo Law Firm, P.C., Auburn, New York, for protestor.

**James R. Sweet**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington D.C., for defendant. With him were **Joyce R. Branda**, Acting Assistant Attorney General, Civil Division, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation, and **Allison Kidd-Miller**, Assistant Director, Civil Division.

**James L. Werner** and **Lawrence M. Hershon**, Parker Poe Adams & Bernstein LLP, Columbia, NC, for intervenor.

## O P I N I O N

### HORN, J.

On September 5, 2014, protestor, Bannum, Inc. (Bannum), filed a post-award bid protest in this court challenging the United States Department of Justice Federal Bureau of Prisons' (BOP's) award of a contract for the provision of Residential Re-Entry Center (RRC) Services in Fayetteville, North Carolina to The Alston Wilkes Society (AWS)

---

[1] This opinion was issued under seal on November 25, 2014. Words which are redacted are reflected with the following notation: "[redacted]."

under Request for Proposals 200-1162-MA (the RFP or solicitation). AWS intervened in the protest. Protestor alleges that AWS did not provide proof of zoning within the required time frame, that it made material misrepresentations in connection with its bid proposal regarding the types of offenders required to be accepted into the facility, in its application for a Special Use Permit and during a City of Fayetteville City Council (City Council) meeting, resulting in "no proof of proper zoning," and that AWS allowed its zoning permit to expire. Further, Bannum argues that BOP abused its discretion when it awarded the contract to AWS despite having direct knowledge of the alleged defects in the AWS bid proposal. Therefore, protestor requests declaratory and injunctive relief. Bannum asks for a declaration "that the award to AWS was arbitrary, capricious, and/or otherwise not in accordance with law," an injunction prohibiting performance of the contract awarded to AWS pursuant to the RFP, and an instruction to the contracting officer to (1) "re-instate Bannum into the competitive range and be considered for award pursuant to the stated evaluation criteria," (2) "award [ ] the contract to Bannum as the only responsive offeror," or (3) "cancel all bids and to re-solicit the contract."

## FINDINGS OF FACT

On December 27, 2011, BOP issued the RFP soliciting bids to provide RRC Services for federal offenders in Fayetteville, North Carolina. The contract, which BOP anticipated it would award by July 4, 2012, was to be for a two-year period, with the possibility of three one-year extensions. The solicitation sought services for an "indefinite [sic] delivery, requirements type contract, with firm-fixed unit prices . . . ." In the RFP, BOP described the criteria on which proposals would be judged:

> Offeror proposals will be evaluated in three areas: Past Performance, Technical/Management and Price. Technical/Management and Past Performance, when combined (Non-Price), are significantly more important than Price. In the Non Price areas, Past Performance is more important than Technical/Management. The Technical/Management areas are composed of the five factors, listed in paragraph 2.0. Offerors should recognize that Price, although of lesser importance than Technical/Management and Past Performance, might contribute substantially to the Source Selection Official's (SSO's) contract award decision. As the evaluation of competing offeror pro-posals [sic] in the Technical/Management and Past Performance areas become more equal in rating, the more important Price will be-come [sic] in selecting the best value for the Government.
>
> . . .
>
> 1.0 Past Performance Evaluation Area
>
> The Past Performance area addresses the Government's confidence in the offeror's probability of successfully performing the effort as proposed based on their record of performance in current and past relevant contract efforts. The Past Performance evaluation will be accomplished by

reviewing aspects of an offeror's relevant present and recent past performance, focusing on and targeting per-form-ance [sic] that is relevant to the Past Performance factors outlined below.

. . .

2.0 Technical/Management Evaluation Area

The Technical/Management area is composed of five factors: (1) Site Location; (2) Accountability; (3) Programs; (4) Facility; and (5) Personnel which are all equal in importance. Site Location is composed of two subfactors, which are equal in importance: (1) Site Validity and Suitability; and (2) Community Relations Program. The factor and subfactor definitions are provided below.

2.1 FACTOR: Site Location

This factor is composed of two subfactors: (1) Site Validity and Suitability and (2) Community Relations Program.

2.1.1 SUBFACTOR: Site Validity and Suitability

The Site Validity and Suitability subfactor evaluates the proposed site location and considers the validity of the offeror's Right-to-Use and Zoning approval. The assessment of validity includes both the legality of the instrument and the nature of the interest and appro-priate [sic] zoning as it relates to any potential risk it poses to the Government. This subfactor also evaluates the Suitability of the Site Loc-ation [sic] with regards to environmental impacts and the responsiveness to proximity requirements defined in the SOW and RFP Section J.

. . .

3.0 Price Evaluation Area

The Government will not specifically score or rate the offeror's price. The Government will evaluate the offeror's price (the inmate day rate) to ensure it is reasonable. The offeror's evaluated price will be assessed against the evaluation results of the Non-Price areas in conducting possible tradeoff analysis and determining the best value to the Government.

(capitalization in original).

The solicitation also states:

> The Government reserves the right to conduct discussions if the Contracting Officer determines them necessary. If not con-tained [sic] in the initial proposal, offerors shall provide the Contracting Officer with valid proof of all zoning and local ordinance require-ments [sic] ne-cessary [sic] for the operation of Residential Reentry Center, or any other program specified on the Work Statement applicable to any and all proposed performance sites within 60 days after the date of the initial proposal submission. In addition, the offeror is re-quired [sic] to maintain proper zoning throughout the life of the contract. An offeror's failure to establish and maintain proof <u>may</u> result in elimina-tion [sic] prior to award and termination for default following award.

(emphasis added).

Responses to the solicitation were due by February 27, 2012. Therefore, valid proof of zoning was due by April 27, 2012 or sixty days after the initial proposal was submitted. Bannum and AWS, the intervenor in this protest, were the only two offerors, and each submitted a timely bid in response to the solicitation. Bannum's bid included valid proof of zoning. AWS's bid noted that a Special Use Permit had been requested on February 7, 2012, a City of Fayetteville Zoning Commission (Zoning Commission) hearing was scheduled to review its application on March 13, 2012, and a hearing by the City Council was scheduled for the week of April 27, 2012. AWS stated that it expected final approval regarding its permit to be given shortly after the City Council hearing at the end of April, which it would then forward to BOP. AWS also included its permit application with its bid. AWS did not submit proof of zoning approval prior to the April 27, 2012 deadline. Rather, on April 30, 2012, AWS submitted a letter to BOP, reiterating that AWS had requested a Special Use Permit and informing BOP that a Zoning Commission hearing had taken place regarding the permit and that the City Council had decided to defer a vote on the permit, sending the permit application to its work group for further discussion and clarification. The letter indicated that the earliest date the City Council potentially would vote on the permit was May 29, 2012. Therefore, AWS requested a thirty-day extension to submit documentation regarding zoning approval. AWS received no response regarding its extension request. On June 4, 2012, AWS informed BOP that the Special Use Permit had been approved, and that when AWS received the zoning letter documenting the approval of AWS's Special Use Permit and minutes from the City Council meeting in which the permit was approved, AWS would forward such documents to BOP. Later that same day, AWS received the zoning letter and submitted it, along with the agenda from the City Council meeting approving the Special Use Permit, to BOP.

On June 15, 2012, contracting officer Jan Johns sent a letter to AWS, informing it that the zoning information and supporting documentation it had submitted on June 4, 2012 were late, and "in accordance with Federal Acquisition Regulation (FAR) 15.208 will not be considered." That same day, June 15, 2012, however, through the

contracting officer, BOP issued Amendment No. 2[2] to the solicitation, which stated:

> If not contained in the initial proposal, **offerors shall provide the Contracting Officer with valid proof of all zoning and local ordinary requirements necessary** for the operation of a Residential Reentry Center (RRC), or any other program specified in the Performance Work Statement (PWS) or Statement of Work (SOW) applicable to any and all proposed performance sites **within 150 days after the date that the solicitation closes**.

(emphasis in original). This amendment, therefore, extended the deadline for submission of zoning proof until July 26, 2012. Nevertheless, on June 26, 2012, in response to an e-mail question from AWS to Ms. Johns, she again reiterated that AWS's submission of materials regarding zoning was late and, therefore, "will not be considered." Ms. Johns further indicated in the e-mail that AWS "do[es] not need to submit any zoning information at this time." Accordingly, in the government's initial Technical/Management Evaluation of AWS, AWS received a poor rating with respect to the Site Validity and Suitability factor, and BOP noted, "[t]he proposal failed to meet all of the solicitation's minimum requirements." Nonetheless, the contracting officer subsequently used her discretion under the solicitation to keep AWS in the competitive range and conduct discussions.

Because the contracting officer had considered AWS's zoning submission as late, in Discussion Notice #1, BOP asked AWS to submit valid documentation of zoning. It also asked AWS to clarify the statement AWS had made in the addendum to its Special Use Permit application to the City of Fayetteville, which noted, "[o]ur clientele are Federal, white-collar nonviolent offenders, who are re-acclimating to society. Referrals are closely screened for program appropriateness and AWS can deny any client that may not best suit the facility's programming and treatment services." BOP noted that the statement AWS had made in the addendum to its application for a Special Use Permit was at odds with the solicitation's Statement of Work, which describes the services that are to be performed under the contract and the broad range of intended recipients of services under the contract. The Statement of Work states:

> **The contractor will accept all offenders for placement at the facility and manage any offender referred by the CCM [Community Corrections Managers].[3] In cases where a referral is denied, the contractor will submit written justification to the CCM who will determine if the justification is in compliance with the technical**

---

[2] Amendment No. 1, while irrelevant to the above captioned protest, stated: "In Section J, replace the US Department of Labor Wage Determination with Wage Determination number 1995-0751 Revision 27, dated 6/13/2011."

[3] The July 25, 2012 amendment to the solicitation changed this title to "Residential Reentry Managers" (RRM).

**proposal. Examples of justification would be if placement of the offender in the RRC would be a violation of local and/or state laws or ordinances. Acceptance of a federal offender not referred by the CCM may result in non-payment under this contract.**

(emphasis in original). Therefore, BOP asked AWS to provide evidence that the appropriate authorities had been notified of the Statement of Work's requirements.[4]

AWS responded on August 7, 2012, enclosing its June 4, 2012 zoning letter. AWS also submitted documentation to comply with BOP's request for proof that AWS had provided notice and information related to the potential offender population at its proposed facility to the City of Fayetteville. One document AWS submitted to BOP, titled "ARGUMENTS TO SUPPORT ISSUANCE OF SPECIAL USE PERMIT" (capitalization in original), had been submitted previously by AWS to the City Council at the May 29, 2012 hearing. It stated, with respect to the type of offenders who would be held at the RRC, that services will be provided to "male and female Federal offenders held under the authority of various US Statues [sic] . . . ." This document does not elaborate further or exclude offenders who will or will not be admitted to the facility. AWS also submitted to BOP an e-mail it had sent to Mr. Craig Harmon, a senior planner from the Fayetteville Planning and Zoning Division, Planning Department. The e-mail to Mr. Harmon included the language from the solicitation that BOP highlighted to AWS, stating that the contractor generally is required to accept all referred offenders, not only the white-collar nonviolent offenders as AWS had identified in its addendum. Mr. Harmon subsequently replied that "[t]he Council's approval was based on the 8 to 2 in favor of the zoning vote from the hearing. The approval was not based on any reference to 'white-collar' or type of offenders being placed there." Having received AWS's response to Discussion Notice #1, BOP noted in a technical/management evaluation that "[t]hrough discussions, AWS provided appropriate zoning documentation," that "the city provided documentation that the city council was adequately notified that all types of offenders would be accepted, and that zoning was not contingent upon any type of offender being placed in the facility."

Subsequently, in its May 7, 2014 source selection decision, BOP determined:

For zoning, **AWS** provided documentation in the form of hearing notes and approval along with a subsequent letter from the city approving their Special Use Permit. Although **AWS'** application for the Special Use Permit included a statement that the "clientele are federal, white collar nonviolent offenders who are re-acclimating to society," which is not correct,

---

[4] At the City Council meeting on May 29, 2012, Ms. Heather Andrews, speaking on behalf of AWS, stated that the facility would house "bank robbers  and money launders [sic] and that there would not be violent or sex offenders." Ms. Andrews' comment was substantially similar to the statement made in the addendum to AWS's Special Use Permit application regarding the potential offender population at its proposed facility. Protestor points to Ms. Andrews' statement as an additional material misrepresentation.

subsequently the city provided documentation that 1) the city council was adequately notified all types of offenders would be accepted, and 2) zoning was not contingent upon any type of offender being placed in the facility. The proof of zoning is acceptable.

(emphasis in original).

In reaching a source selection decision, contracting officer Stefanie Skroch[5] noted that the non-price proposals were extremely close. Bannum and AWS each received "acceptable" ratings in the Past Performance and Technical/Management categories, but Bannum's strengths did not outweigh AWS's strengths, and because the non-price proposals were so close, price became more important in determining the best value. AWS's total overall price was $5,035,551.38, and Bannum's total overall price was $[redacted], or $[redacted] greater than AWS's price. Therefore, BOP concluded that awarding the contract to AWS would provide the "best value" to the government. On May 16, 2014, BOP notified Bannum that the contract was awarded to AWS. In response, Bannum filed an initial protest with the Government Accountability Office (GAO). Subsequently, as part of Bannum's response to the agency's report, Bannum submitted additional protest grounds, specifically adding claims regarding zoning. The GAO sent an e-mail to Bannum, stating that in Bannum's response to the agency's report, it failed to "address the agency's response; instead, argued 'supplemental protest grounds' and [failed to] provide a rebuttal to the agency's dismissal request for failure to acknowledge[ ] RFP amendment 2." GAO asked Bannum to submit a response establishing the timeliness of its supplemental protest grounds, which Bannum submitted. On July 21, 2014, GAO issued its decision, dismissing the protest "because the protestor has abandoned its initial protest grounds and because its supplemental protest grounds are untimely." Thereafter, on September 5, 2014, Bannum filed its protest with this court. After discussions with the parties at an initial hearing on September 9, 2014, the parties filed, and briefed cross-motions for judgment on the administrative record.

## DISCUSSION

Pursuant to Rule 52.1(c) of the Rules of the United States Court of Federal Claims (RCFC) (2014), which governs motions for judgment on the administrative record, the court's inquiry is directed to "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." Mgmt. and Training Corp. v. United States, 115 Fed. Cl. 26, 40 (2014) (quoting A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1356–57 (Fed. Cir. 2005)); see also Eco Tour Adventures, Inc. v. United States, 114 Fed. Cl. 6, 21 (2013); DMS All-Star Joint Venture v. United States, 90 Fed. Cl. 653, 661 (2010).

---

[5] During the course of the lengthy procurement process, Ms. Johns retired and Ms. Skroch replaced her as the contracting officer for the RFP.

The Administrative Dispute Resolution Act of 1996 (ADRA), Pub. L. No. 104-320, §§ 12(a), 12(b), 110 Stat. 3870, 3874 (1996) (codified at 28 U.S.C. § 1491(b)(1)–(4) (2012)), amended the Tucker Act to establish a statutory basis for bid protests in the United States Court of Federal Claims. See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1330–32 (Fed. Cir. 2001). The statute provides that protests of agency procurement decisions are to be reviewed under Administrative Procedure Act (APA) standards, making applicable the standards outlined in Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970), and the line of cases following that decision. See, e.g., Kingdomware Techs., Inc. v. United States, 754 F.3d 923, 930 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2014) ("In reviewing an agency's action in a bid protest case, we generally apply the Administrative Procedure Act's 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or 'without observance of a procedure required by law' standard of review." (citing 5 U.S.C. § 706(2)(A), (D) (2012); Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332)); Res. Conservation Grp., LLC v. United States, 597 F.3d 1238, 1242 (Fed. Cir.) ("Following passage of the APA in 1946, the District of Columbia Circuit in Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970), held that challenges to awards of government contracts were reviewable in federal district courts pursuant to the judicial review provisions of the APA."), aff'd, 432 F. App'x 975 (Fed. Cir. 2011); Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1329 (Fed. Cir.) (citing to Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d at 864, 868, for its reasoning that "suits challenging the award process are in the public interest and disappointed bidders are the parties with an incentive to enforce the law"), reh'g denied (Fed. Cir. 2004); Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1351 (Fed. Cir. 2004) ("Under the APA standard as applied in the Scanwell line of cases, and now in ADRA cases, 'a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332)); Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2003). The United States Court of Appeals for the Federal Circuit has stated that the Court of Federal Claims' jurisdiction over "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement," 28 U.S.C. § 1491(b)(1) (2012), "provides a broad grant of jurisdiction because '[p]rocurement includes all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout.'" Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1381 (Fed. Cir. 2012) (emphasis in original) (quoting Res. Conservation Grp., LLC v. United States, 597 F.3d at 1244 (quoting 41 U.S.C. § 403(2))); see also Rockies Exp. Pipeline LLC v. Salazar, 730 F.3d 1330, 1336 (Fed. Cir. 2013), reh'g denied (Fed. Cir. 2014); Distrib. Solutions, Inc. v. United States, 539 F.3d 1340, 1345 (Fed. Cir.) ("[T]he phrase, 'in connection with a procurement or proposed procurement,' by definition involves a connection with any stage of the federal contracting acquisition process, including 'the process for determining a need for property or services.'"), reh'g denied (Fed. Cir. 2008); RAMCOR Servs. Grp., Inc. v. United States, 185 F.3d 1286, 1289 (Fed. Cir. 1999) ("The operative phrase 'in connection with' is very sweeping in scope.").

Agency procurement actions should be set aside when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (2)(D) (2012);[6] see also Orion Tech., Inc. v. United States, 704 F.3d 1344, 1347 (Fed. Cir. 2013); COMINT Sys. Corp. v. United States, 700 F.3d 1377, 1381 (Fed. Cir. 2012); Savantage Fin. Servs. Inc., v. United States, 595 F.3d 1282, 1285–86 (Fed. Cir. 2010); Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1358 (Fed. Cir. 2009); Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1381 (Fed. Cir. 2009) (noting arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A), and reaffirming the analysis of Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332); Blue & Gold

---

[6] The language of 5 U.S.C. § 706 provides:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.

Fleet, L.P. v. United States, 492 F.3d 1308, 1312 (Fed. Cir. 2007) ("[T]he inquiry is whether the [government's] procurement decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting 5 U.S.C. § 706(2)(A) (2000))); Bannum, Inc. v. United States, 404 F.3d at 1351; Eco Tour Adventures, Inc. v. United States, 114 Fed. Cl. at 22; Contracting, Consulting, Eng'g LLC v. United States, 104 Fed. Cl. 334, 340 (2012). "In a bid protest case, the agency's award must be upheld unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Turner Constr. Co. v. United States, 645 F.3d 1377, 1383 (Fed. Cir.) (quoting PAI Corp. v. United States, 614 F.3d 1347, 1351 (Fed. Cir. 2010)), reh'g and reh'g en banc denied (Fed. Cir. 2011); see also Glenn Defense Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 907 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2013); McVey Co. v. United States, 111 Fed. Cl. 387, 402 (2013) ("The first step is to demonstrate error, that is, to show that the agency acted in an arbitrary and capricious manner, without a rational basis or contrary to law."); PlanetSpace, Inc. v. United States, 92 Fed. Cl. 520, 531–32 (2010) ("Stated another way, a plaintiff must show that the agency's decision either lacked a rational basis or was contrary to law." (citing Weeks Marine, Inc. v. United States, 575 F.3d at 1358)).

In discussing the appropriate standard of review for bid protest cases, the United States Court of Appeals for the Federal Circuit specifically addressed subsections (2)(A) and (2)(D) of 5 U.S.C. § 706, see Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332 n.5, but the Federal Circuit has focused its attention primarily on subsection (2)(A). See Croman Corp. v. United States, 724 F.3d 1357, 1363 (Fed. Cir. 2013) ("'[T]he proper standard to be applied [to the merits of] bid protest cases is provided by 5 U.S.C. § 706(2)(A) [ (2006) ]: a reviewing court shall set aside the agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."'" (quoting Banknote Corp. of Am. v. United States, 365 F.3d at 1350–51 (citing Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057–58 (Fed. Cir.), reh'g denied (Fed. Cir. 2000)))) (alterations in original); COMINT Sys. Corp. v. United States, 700 F.3d at 1381 ("We evaluate agency actions according to the standards set forth in the Administrative Procedure Act; namely, for whether they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting 5 U.S.C. § 706(2)(A); Bannum, Inc. v. United States, 404 F.3d at 1351)); NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004) ("Bid protest actions are subject to the standard of review established under section 706 of Title 5 of the Administrative Procedure Act ('APA'), 28 U.S.C. § 1491(b)(4) (2000), by which an agency's decision is to be set aside only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 5 U.S.C. § 706(2)(A) (2000).") (citations omitted); Banknote Corp. of Am., Inc. v. United States, 365 F.3d at 1350 ("Among the various APA standards of review in section 706, the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A): a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting 5 U.S.C. § 706(2)(A) and citing Advanced Data Concepts, Inc. v. United States, 216 F.3d at 1057–58)); Info. Tech. & Applications Corp. v. United States, 316 F.3d at 1319 ("Consequently, our inquiry is whether the Air Force's procurement decision was 'arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A) (2000).").

The United States Supreme Court has identified sample grounds which can constitute arbitrary or capricious agency action:

> [W]e will not vacate an agency's decision unless it "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 658 (2007) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)); see also F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 552 (2009); Ala. Aircraft Indus., Inc.-Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009), reh'g and reh'g en banc denied (Fed. Cir. 2010); In re Sang Su Lee, 277 F.3d 1338, 1342 (Fed. Cir. 2002) ("The agency must present a full and reasoned explanation of its decision . . . . The reviewing court is thus enabled to perform a meaningful review . . . ."), aff'd on subsequent appeal, 262 F. App'x 275 (Fed. Cir. 2008); Textron, Inc. v. United States, 74 Fed. Cl. 277, 285–86 (2006), appeal dismissed sub nom. Textron, Inc. v. Ocean Technical Servs., Inc., 222 F. App'x 996 (Fed. Cir.), and dismissed per stipulation sub nom. Textron, Inc. v. Ocean Technical Servs., Inc., 223 F. App'x 974 (Fed. Cir. 2007). The United States Supreme Court also has cautioned, however, that "courts are not free to impose upon agencies specific procedural requirements that have no basis in the APA." Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 654 (1990).

A disappointed bidder has the burden of demonstrating the arbitrary and capricious nature of the agency decision by a preponderance of the evidence. See Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 995–96 (Fed. Cir. 1996); Davis Boat Works, Inc. v. United States, 111 Fed. Cl. 342, 349 (2013); Contracting, Consulting, Eng'g LLC v. United States, 104 Fed. Cl. at 340. The Federal Circuit has made clear that "[t]his court will not overturn a contracting officer's determination unless it is arbitrary, capricious, or otherwise contrary to law. To demonstrate that such a determination is arbitrary or capricious, a protester must identify 'hard facts;' a mere inference or suspicion . . . is not enough." PAI Corp. v. United States, 614 F.3d at 1352 (citing John C. Grimberg Co. v. United States, 185 F.3d 1297, 1300 (Fed. Cir. 1999); see also Turner Const. Co., Inc. v. United States, 645 F.3d at 1387; Sierra Nevada Corp. v. United States, 107 Fed. Cl. 735, 759 (2012); Filtration Dev. Co., LLC v. United States, 60 Fed. Cl. 371, 380 (2004).

Under an arbitrary or capricious standard, the reviewing court should not substitute its judgment for that of the agency, but should review the basis for the agency decision to determine if it was legally permissible, reasonable, and supported by the facts. See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. at 43

("The scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment for that of the agency."); see also Turner Const. Co., Inc. v. United States, 645 F.3d 1377, 1383 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2011); R & W Flammann GmbH v. United States, 339 F.3d 1320, 1322 (Fed. Cir. 2003) (citing Ray v. Lehman, 55 F.3d 606, 608 (Fed. Cir.), cert. denied, 516 U.S. 916 (1995)). ""If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations."" Weeks Marine, Inc. v. United States, 575 F.3d at 1371 (quoting Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971))); Davis Boat Works, Inc. v. United States, 111 Fed. Cl. at 349; Norsat Int'l [America], Inc. v. United States, 111 Fed. Cl. 483, 493 (2013); HP Enter. Servs., LLC v. United States, 104 Fed. Cl. 230, 238 (2012); Vanguard Recovery Assistance v. United States, 101 Fed. Cl. 765, 780 (2011).

As stated by the United States Supreme Court:

> Section 706(2)(A) requires a finding that the actual choice made was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977); see also U.S. Postal Serv. v. Gregory, 534 U.S. 1, 6–7 (2001); Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974), reh'g denied, 420 U.S. 956 (1975); Co-Steel Raritan, Inc. v. Int'l Trade Comm'n, 357 F.3d 1294, 1309 (Fed. Cir. 2004) (In discussing the "arbitrary, capricious, and abuse of discretion otherwise not in accordance with the law" standard, the Federal Circuit stated that "the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency."); In re Sang Su Lee, 277 F.3d at 1342; Advanced Data Concepts, Inc. v. United States, 216 F.3d at 1058 ("The arbitrary and capricious standard applicable here is highly deferential. This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." (citing Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. at 285)); Lockheed Missiles & Space Co. v. Bentsen, 4 F.3d 955, 959 (Fed. Cir. 1993); BCPeabody Constr. Servs., Inc. v. United States, 112 Fed. Cl. 502, 508 (2013) ("The court 'is not empowered to substitute its judgment for that of the agency,' and it must uphold an agency's decision against a challenge if the 'contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" (quoting Keeton Corrs., Inc. v. United States, 59 Fed. Cl. 753, 755, recons. denied, 60 Fed. Cl. 251 (2004), and Axiom Res. Mgmt.,

Inc. v. United States, 564 F.3d at 1381)), appeal withdrawn, No. 2014-5024, 2014 WL 1386691 (Fed. Cir. Mar. 27, 2014) (internal citations omitted); Supreme Foodservice GmbH v. United States, 109 Fed. Cl. 369, 382 (2013); Alamo Travel Grp., LP v. United States, 108 Fed. Cl. 224, 231 (2012); ManTech Telecomms. & Info. Sys. Corp. v. United States, 49 Fed. Cl. 57, 63 (2001), aff'd, 30 F. App'x 995 (Fed. Cir. 2002); Ellsworth Assocs., Inc. v. United States, 45 Fed. Cl. 388, 392 (1999) ("Courts must give great deference to agency procurement decisions and will not lightly overturn them." (citing Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743–44 (1985))), appeal dismissed, 6 F. App'x 867 (Fed. Cir 2001), and superseded by regulation as recognized in MVS USA, Inc. v. United States, 111 Fed. Cl. 639 (2013).

According to the United States Court of Appeals for the Federal Circuit:

Effective contracting demands broad discretion. Burroughs Corp. v. United States, 223 Ct. Cl. 53, 617 F.2d 590, 598 (1980); Sperry Flight Sys. Div. v. United States, 548 F.2d 915, 921, 212 Ct. Cl. 329 (1977); see NKF Eng'g, Inc. v. United States, 805 F.2d 372, 377 (Fed. Cir. 1986); Tidewater Management Servs., Inc. v. United States, 573 F.2d 65, 73, 216 Ct. Cl. 69 (1978); RADVA Corp. v. United States, 17 Cl. Ct. 812, 819 (1989), aff'd, 914 F.2d 271 (Fed. Cir. 1990). Accordingly, agencies "are entrusted with a good deal of discretion in determining which bid is the most advantageous to the Government." Tidewater Management Servs., 573 F.2d at 73, 216 Ct. Cl. 69.

Lockheed Missiles & Space Co. v. Bentsen, 4 F.3d at 958–59; see also Res-Care, Inc. v. United States, 735 F.3d 1384, 1390 (Fed. Cir.) ("DOL [Department of Labor], as a federal procurement entity, has 'broad discretion to determine what particular method of procurement will be in the best interests of the United States in a particular situation.'" (quoting Tyler Const. Grp. v. United States, 570 F.3d 1329, 1334 (Fed. Cir. 2009))), reh'g en banc denied (Fed. Cir. 2014); Grumman Data Sys. Corp. v. Dalton, 88 F.3d at 995; Kingdomware Techs., Inc. v. United States, 107 Fed. Cl. 226, 231 (2012) ("'Federal procurement entities have "broad discretion to determine what particular method of procurement will be in the best interests of the United States in a particular situation."'" (quoting K-Lak Corp. v. United States, 98 Fed. Cl. 1, 8 (2011) (quoting Tyler Const. Grp. v. United States, 570 F.3d at 1334))), aff'd, 754 F.3d 923 (Fed. Cir.), reh'g denied (Fed. Cir. 2014); Cybertech Grp., Inc. v. United States, 48 Fed. Cl. 638, 646 (2001) ("The court recognizes that the agency possesses wide discretion in the application of procurement regulations."); JWK Int'l Corp. v. United States, 49 Fed. Cl. 371, 388 (2001), aff'd, 279 F.3d 985 (Fed. Cir.), reh'g denied (Fed. Cir. 2002).

Similarly, the Federal Circuit further has indicated that:

Contracting officers "are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (internal quotation marks omitted). Accordingly,

procurement decisions are subject to a "highly deferential rational basis review." CHE Consulting, Inc. v. United States, 552 F.3d 1351, 1354 (Fed. Cir. 2008) (internal quotation marks omitted). Applying this highly deferential standard, the court must sustain an agency action unless the action does not "evince[ ] rational reasoning and consideration of relevant factors." Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000) (alterations added).

PAI Corp. v. United States, 614 F.3d at 1351; see also Weeks Marine, Inc. v. United States, 575 F.3d at 1368–69 ("We have stated that procurement decisions 'invoke[ ] "highly deferential" rational basis review.' Under that standard, we sustain an agency action 'evincing rational reasoning and consideration of relevant factors.'" (quoting CHE Consulting, Inc. v. United States, 552 F.3d at 1354 (quoting Advanced Data Concepts, Inc. v. United States, 216 F.3d at 1058))); Cohen Fin. Servs., Inc. v. United States, 112 Fed. Cl. 153, 162 (2013); McVey Co., Inc. v. United States, 111 Fed. Cl. 387, 402 (2013).

In addition, the court "assume[s] that the government acts in good faith while contracting." Galen Med. Assocs., Inc. v. United States, 56 Fed. Cl. 104, 108 (2003), aff'd, 369 F.3d 1324 (Fed. Cir.), reh'g denied (Fed. Cir. 2004); Madison Servs, Inc. v. United States, 92 Fed. Cl. 120, 129 (quoting Aero Corp. v. United States, 38 Fed. Cl. 408, 413 (1997) ("The court's review is thus guided by the "well-established principle that contracting officials are presumed to act in good faith when executing their procurement functions.")), relief from judgment denied, 94 Fed. Cl. 501 (2010). A protestor must show "'well -nigh irrefragable proof' that the government had an intent to injure it to overcome this presumption." Galen Med. Assocs., Inc. v. United States, 56 Fed. Cl. at 108 (quoting Knotts v. United States, 128 Ct. Cl. 489, 492, 121 F. Supp. 630, 631 (1954)); see also Caldwell & Santmyer, Inc. v. Glickman, 55 F.3d 1578, 1581 (Fed. Cir. 1995) ("We assume the government acts in good faith when contracting. Torncello [v. United States], 681 F.2d [756,] 770 [(1982)]; Librach v. United States, 147 Ct. Cl. 605, 1959 WL 7633 (1959). A contractor can overcome this presumption only if it shows through 'well-nigh irrefragable proof' that the government had a specific intent to injure it. Torncello, 681 F.2d at 770."); Madison Servs, Inc. v. United States, 92 Fed. Cl. at 129.

The wide discretion afforded contracting officers extends to a broad range of procurement functions, including the determination of what constitutes an advantage over other proposals. See E.W. Bliss Co. v. United States, 77 F.3d at 449; Ellsworth Assocs., Inc. v. United States, 45 Fed. Cl. at 392. In a negotiated procurement, contracting officers are generally afforded greater decision making discretion, in comparison to their role in sealed bid procurements. See Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d at 907 ("The protestor's burden is greater in negotiated procurement, as here, than in other types of bid protests because '"the contracting officer is entrusted with a relatively high degree of discretion."'" (quoting Galen Med. Assocs., Inc. v. United States, 369 F.3d at 1330 (quoting Burroughs Corp. v. United States, 223 Ct. Cl. 597–98, 617 F.2d 590, 597 (1980)))); Galen Med. Assocs.,

Inc. v. United States, 369 F.3d at 1330 ("Because the bid protest at issue here involved a 'negotiated procurement,' the protestor's burden of proving that the award was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law is greater than in other types of bid protests." (citations omitted)); Am. Tel. & Tel. Co. v. United States, 307 F.3d 1374, 1379 (Fed. Cir. 2002) ("Moreover, in a negotiated procurement, as in this case, this court has held that the regulations entrust the contracting officer with especially great discretion, extending even to his application of procurement regulations."), reh'g en banc denied (Fed. Cir.), cert. denied, 540 U.S. 937 (2003). The question is not whether the court would reach the same conclusions as the agency regarding the comparison of proposals, but, rather, whether the conclusions reached by the agency lacked a reasonable basis and, therefore, were arbitrary or capricious, in which case, courts have a role to review and instruct. See WorldTravelService v. United States, 49 Fed. Cl. 431, 441 (2001) ("Therefore, this court's main task is to ensure that the [agency] examined the relevant data and articulated a 'rational connection between the facts found and the choice made.'" (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. at 43 (internal citations omitted))).

The United States Court of Appeals for the Federal Circuit has explained that procurement officials have a greater degree of discretion when it comes to best-value determinations, as compared to a procurement based on price alone. See Galen Med. Assocs., Inc. v. United States, 369 F.3d at 1330 (noting that because "the contract was to be awarded based on 'best value,' the contracting officer had even greater discretion than if the contract were to have been awarded on the basis of cost alone"); see also Croman Corp. v. United States, 724 F.3d at 1363 (noting the significant discretion contracting officers possess when awarding contracts on the basis of best value to the agency) (citing Banknote Corp. of Am. Inc. v. United States, 365 F.3d at 1355); CHE Consulting, Inc. v. United States, 552 F.3d 1351, 1354 (Fed. Cir. 2008) (citing E.W. Bliss Co. v. United States, 77 F.3d at 449); Banknote Corp. of Am. Inc. v. United States, 365 F.3d at 1355 ("It is well-established that contracting officers have a great deal of discretion in making contract award decisions, particularly when, as here, the contract is to be awarded to the bidder or bidders that will provide the agency with the best value." (citing TRW, Inc. v. Unisys Corp., 98 F.3d 1325, 1327–28 (Fed. Cir. 1996))); Am. Tel. & Tel. Co. v. United States, 307 F.3d at 1379; E.W. Bliss Co. v. United States, 77 F.3d at 449 ("Procurement officials have substantial discretion to determine which proposal represents the best value for the government."); AM Gen., LLC v. United States, 115 Fed. Cl. 653, 697 (2014); Amazon Web Servs., Inc. v. United States, 113 Fed. Cl. 102, 110 (2013) ("Contracting officers are afforded 'an even greater degree of discretion when the award is determined based on the best value to the agency.'" (quoting Galen Med. Assocs., Inc. v. United States, 369 F.3d at 1330)); Akal Sec., Inc. v. United States, 103 Fed. Cl. 310, 329 (2011) ("The United States Court of Appeals for the Federal Circuit has recognized that '[p]rocurement officials have substantial discretion to determine which proposal represents the best value for the government.'" (quoting E.W. Bliss Co. v. United States, 77 F.3d at 449)); Blackwater Lodge & Training Ctr., Inc. v. United States, 86 Fed. Cl. 488, 514 (2009).

In <u>E.W. Bliss Co. v. United States</u>, the United States Court of Appeals for the Federal Circuit offered guidance on the applicable standard of review in best value determinations:

> Procurement officials have substantial discretion to determine which proposal represents the best value for the government. <u>See</u> <u>Lockheed Missiles & Space Co., Inc. v. Bentsen</u>, 4 F.3d 955, 958 (Fed. Cir. 1993); <u>cf.</u> <u>Widnall v. B3H</u>, 75 F.3d 1577 (Fed. Cir. 1996) (holding that Board of Contract Appeals should defer to agency's best value decision as long as it is "grounded in reason . . . even if the Board itself might have chosen a different bidder"); <u>In re General Offshore Corp.</u>, B-251969.5, B-251969.6, 94-1 Comptroller Gen.'s Procurement Decisions (Federal Publications Inc.) ¶ 248, at 3 (Apr. 8, 1994) ("In a negotiated procurement, any proposal that fails to conform to material terms and conditions of the solicitation should be considered unacceptable and may not form the basis for an award. Where an evaluation is challenged, we will examine the agency's evaluation to ensure that it was reasonable and consistent with the evaluation criteria and applicable statutes and regulations, since the relative merit of competing proposals is primarily a matter of administrative discretion.") (citations omitted).
>
> . . .
>
> Bliss' [other challenges to the procurement] deal with the minutiae of the procurement process in such matters as technical ratings . . . which involve discretionary determinations of procurement officials that a court will not second guess. <u>See</u> <u>Lockheed Missiles & Space Co.</u>, 4 F.3d at 958; <u>Grumman Data Systems Corp. v. Widnall</u>, 15 F.3d 1044, 1048 (Fed. Cir. 1994) ("[S]mall errors made by the procuring agency are not sufficient grounds for rejecting an entire procurement.").

<u>E.W. Bliss Co. v. United States</u>, 77 F.3d at 449; <u>see also</u> <u>Vanguard Recovery Assistance v. United States</u>, 101 Fed. Cl. at 780; <u>Galen Med. Assocs., Inc. v. United States</u>, 74 Fed. Cl. 377, 383–84 (2006); <u>JWK Int'l Corp. v. United States</u>, 49 Fed. Cl. at 388.

When the contracting officer's discretion grows, so does the burden on the protestor to overturn the contracting officer's decisions. As described in <u>D & S Consultants, Inc. v. United States</u>:

> The protestor's burden becomes more difficult the greater the degree of discretion vested in the contracting officer. <u>DynCorp Int'l v. United States</u>, 76 Fed. Cl. 528, 537 (2007). Negotiated procurements afford the contracting officer a "breadth of discretion;" "best-value" awards afford the contracting officer additional discretion. <u>Id.</u> Therefore, in a negotiated, best-value procurement, the "protestor's burden is especially heavy." <u>Id.</u>

D & S Consultants, Inc. v. United States, 101 Fed. Cl. 23, 33 (2011), aff'd, 484 F. App'x 558 (Fed. Cir. 2012); see also Galen Med. Assocs., Inc. v. United States, 369 F.3d at 1330 (noting that contracting officers have great discretion in negotiated procurements but even greater discretion in best-value determinations than in procurements based on cost alone); PHT Supply Corp. v. United States, 71 Fed. Cl. 1, 11 (2006) ("It is critical to note that 'a protestor's burden is particularly great in negotiated procurements because the contracting officer is entrusted with a relatively high degree of discretion, and greater still, where, as here, the procurement is a "best-value" procurement.'" (citations omitted)). "It is well-established that contracting officers have a great deal of discretion in making contract award decisions, particularly when, as here, the contract is to be awarded to the bidder or bidders that will provide the agency with the best value." Banknote Corp. of Am. Inc. v. United States, 365 F.3d at 1355 (citing TRW, Inc. v. Unisys Corp., 98 F.3d at 1327–28; E.W. Bliss Co. v. United States, 77 F.3d at 449; and Lockheed Missiles & Space Co. v. Bentsen, 4 F.3d at 958–59); see also Croman Corp. v. United States, 724 F.3d at 1363; Am. Tel. & Tel. Co. v. United States, 307 F.3d at 1379; Lockheed Missiles & Space Co. v. United States, 4 F.3d at 958; Bahrain Maritime & Mercantile Int'l BSC v. United States, 118 Fed. Cl. 462 (2014); Brooks Range Contract Servs., Inc. v. United States, 101 Fed. Cl. 699, 707 (2011) ("[A] plaintiff's burden 'is elevated where the solicitation contemplates award on a "best value" basis.'" (internal citations omitted)); PlanetSpace Inc. v. United States, 96 Fed. Cl. 119, 125 (2010) (citing Galen Med. Assocs., Inc. v. United States, 369 F.3d at 1330 ("An agency's contract award is thus least vulnerable to challenge when based upon a best value determination.")); Matt Martin Real Estate Mgmt. LLC v. United States, 96 Fed. Cl. 106, 113 (2010); Serco v. United States, 81 Fed. Cl. 463, 496 (2008) ("To be sure, as noted at the outset, plaintiffs have a significant burden of showing error in that regard because a court must accord considerable deference to an agency's best-value decision in trading off price with other factors.").

The solicitation stated that proposals would be evaluated in three areas: Past Performance, Technical/Management, and Price, and that the contract would be awarded to the offeror whose bid presents the best value to the government. Past Performance and Technical/Management were significantly more important than Price; however, as the offerors' ratings in Past Performance and Technical/Management became more similar to each other, Price became more important. Not only is the protest before this court a negotiated procurement, but it also is a best value determination. Because the agency announced it would award the bid on the basis of best value, this court should "accord considerable deference" to the agency's decision. See Serco v. United States, 81 Fed. Cl. at 496. Protestor, therefore, must meet a considerable burden in order to overcome the presumption of deference to the agency's award decision. As described above, protestor claims that the agency abused its discretion in awarding the contract to AWS because AWS (1) failed to submit timely proof of zoning, (2) made material misrepresentations in connection with its bid proposal, and (3) allowed its zoning permit to lapse in violation of the requirement to

maintain proper zoning.[7]

The RFP stated that proof of adequate zoning was to be submitted with an offeror's bid or within sixty days of the initial submission, and "[a]n offeror's failure to establish and maintain proof may result in elimina-tion [sic] prior to award and termination for default following award." AWS did not submit valid proof of zoning by April 27, 2012, sixty days after the initial submission. Instead, AWS included with its bid a copy of its zoning permit application and a schedule delineating the expected timeline for receiving approval from the City of Fayetteville for its Special Use Permit. On April 30, 2012, AWS updated BOP on the projected timing of its permit approval and requested a thirty-day extension to submit proof of zoning, although BOP did not respond to protestor's request. On June 4, 2012, AWS informed BOP that its Special Use Permit had been approved and forwarded the zoning letter documenting the approval to BOP. On June 15, 2012, however, the contracting officer sent AWS a letter informing AWS that its zoning information was late, and that in accordance with FAR 15.208 (2012), it would not be considered. On the same date, June 15, 2012, however, BOP issued Amendment No. 2 to the solicitation, extending the deadline to submit proof of zoning to 150 days after the close of submissions. Nonetheless, on June 26, 2012, in an e-mail exchange with AWS, BOP reiterated to AWS that its zoning proof was late and would not be considered. BOP ultimately opted to keep AWS in the competitive range and allow AWS to provide late proof of zoning during discussions, citing AWS's efforts to keep BOP informed of its progress with respect to obtaining the Special Use Permit, BOP's institutional knowledge that such permits can often be challenging and time-consuming to obtain, and BOP's interest in avoiding a sole-source situation, if reasonably possible.

BOP had the authority to keep AWS in the competitive range despite its zoning deficiency. The solicitation stated that an offeror's failure to establish and maintain proof

---

[7] In discussing the procurement currently under review, protestor tries to refer the court to an earlier protest Bannum brought, in which it claimed the government used language in the solicitation, comparable to the language of the solicitation underlying this protest, which states that the agency "may" eliminate an offeror for failure to establish or maintain proof of zoning, to justify removing Bannum from the competitive range, and asserts that this is evidence of disparate treatment. See Bannum, Inc. v. United States, 118 Fed. Cl. 139 (2014). The earlier case to which protestor refers, however, is not relevant here. In protestor's earlier case, the facts were significantly different from those currently before the court. Moreover, in the procurement currently before the court, the wording of the solicitation provided the agency with discretion to retain or disqualify an offeror for lack of zoning proof at a particular moment in time until contract award or during "the life of the contract." The fact that the agency, in one instance, retained an offeror, and in a second instance, under different facts, disqualified an offeror, does not, without more, demonstrate disparate treatment. Additionally, although also not relevant, Bannum previously had filed another protest in this court, Bannum, Inc. v. United States, 115 Fed. Cl. 257 (2014), which also alleged material misrepresentation by a winning bidder in a procurement.

of adequate zoning "may" result in elimination. Notably, the word in the solicitation "may" indicates that elimination was not required, as it would have been if the solicitation had said failure to submit adequate zoning "will" result in elimination, "shall" result in elimination, or "must" result in elimination. The plain language of the solicitation provided the contracting officer with discretion in this decision. Furthermore, the solicitation stated, "[t]he Government reserves the right to conduct discussions if the Contracting Officer determines them necessary." Although when issued the solicitation established a timeline for submitting valid proof of zoning within sixty days after the date of proposal submission, the reservation in the solicitation of the right to conduct discussions and the use of the word "may" did provide the contracting officer with leeway to accept proof of zoning from AWS at a later date, during discussions. At best, conduct of the procurement lacked coordination, but it was within the agency's discretion. There appears to have been a stark lack of communication at the agency, as twice, the agency indicated that AWS's proof of zoning was late and would not be accepted, once even after the June 15, 2012 amendment to the solicitation was issued extending the submission deadline. Even in the solicitation, however, the sixty-day submission timeline was established with flexibility, preserving the agency's discretion not to eliminate proposals for failure to submit proof of zoning within sixty days and the agency's right to conduct discussions. Ultimately, the contracting officer retained the right to do what she did when she accepted AWS's proof of zoning prior to award of the contract.

Protestor also argues that the discretion the agency identified in the solicitation, whereby it "may" eliminate an offeror for failure to submit timely zoning documentation, is at odds with FAR 15.208, which, according to the protestor, states that the late submission of proposals, or modifications to proposals, "will not be considered." Defendant argues in response that protestor is foreclosed from arguing that "FAR 15.208 was inconsistent with the RFP provision giving the contracting officer discretion to keep an offeror who failed to establish proof of zoning within the competitive range and conduct discussions instead." Defendant asserts that any conflict between the solicitation and the FAR, if it existed, was patent on the face of the solicitation, and Bannum, therefore, had its opportunity to raise this challenge during the bid process, but failed to do so.

Regardless of defendant's waiver argument, the conflict protestor raises does not exist. Although FAR 15.208(b)(1) indicates that a late "proposal, modification, or revision . . . will not be considered," that phrase is followed immediately by, "unless it is received before award is made, the contracting officer determines that accepting the late proposal would not unduly delay the acquisition," and meets one of three conditions, which do not apply in this case. See FAR 15.208(b)(1). This language is followed, however, by FAR 15.208(b)(2), which states, "[h]owever, a late modification of an otherwise successful proposal, that makes its terms more favorable to the Government, will be considered at any time it is received and may be accepted." Under the FAR, the agency had the discretion to accept AWS's June 4, 2012 submission of its proof of meeting local zoning requirements. Based on a review of the record before the court, the agency's decision to keep AWS in the competitive range and accept its

zoning submission when offered, even beyond sixty days after submission of the original proposal, was permissible and not arbitrary, capricious, or not in accordance with law.

Protestor also argues that BOP abused its discretion when it awarded the contract to AWS despite alleged material misrepresentations of which BOP was aware when it evaluated the proposals. In order to establish that a material misrepresentation was made, a protestor must show that an offeror made a false statement, and that the false statement was relied upon by the agency in awarding the contract to the offeror. See Optimization Consulting, Inc. v. United States, 115 Fed. Cl. 78, 99 (2013) (requiring proof the agency relied on the false statement in order to establish a claim of material misrepresentation); Supreme Foodservice GmBH v. United States, 112 Fed. Cl. 402, 425 (2013) ("Moreover, a material misrepresentation requires establishing that [the agency] relied on what has been determined to be an intentional misstatement."); GTA Containers, Inc. v. United States, 103 Fed. Cl. 471, 483 (2012) (stating that in order to prove a material misrepresentation when challenging the award of a contract requires establishing that the awardee made a false statement and that such statement was relied upon by the agency in selecting the awardee); Acrow Corp. of Am. v. United States, 97 Fed. Cl. 161, 175 (2011) ("'[a] misrepresentation is material where an agency has relied upon the misrepresentation and that misrepresentation likely had a significant impact upon the determination.'" (quoting Tucson Mobilephone, Inc., B-258408, 1995 WL 335101 at *6 (Comp. Gen. June 5, 1995))); Sealift, Inc. v. United States, 82 Fed. Cl. 527, 538, (2008) (determining that the protestor was required to demonstrate that a false statement was made intentionally and that the agency relied on the false statement in order to prove the existence of a material misrepresentation) (citing Planning Research Corp. v. United States, 971 F.2d 736, 741 (Fed. Cir. 1992)); Blue & Gold Fleet, LP v. United States, 70 Fed. Cl. 487, 495 (2006) ("To establish a material misrepresentation, plaintiff must demonstrate that (1) [defendant-intervenor] made a false statement; and (2) the [agency] relied on that false statement in selecting [defendant-intervenor's] proposal for the contract award."), aff'd, 492 F.3d 1308 (Fed. Cir. 2007); Synetics, Inc. v. United States, 45 Fed. Cl. 1, 16 (1999) ("Thus, even assuming an intentional misrepresentation occurred, plaintiff cannot demonstrate that the alleged misrepresentation was material, as there is no evidence that defendant relied on it in its evaluation of intervenor's proposal.").

The false statement also must have been made intentionally. See Supreme Foodservice GmBH v. United States, 112 Fed. Cl. at 425 ("There is no showing of any intentional falsity." (citing Fulcra Worldwide, LLC v. United States, 97 Fed. Cl. 523, 541 (2011) (determining that there was no misrepresentation when information was included in a proposal in good faith); Unified Architecture & Eng'g, Inc. v. United States, 46 Fed. Cl. 56, 65 (2000) (finding that the bid protester did not establish misrepresentation when there was no evidence the misrepresentation was intentional), aff'd, 251 F.3d 170 (Fed. Cir. 2000))); Sealift, Inc. v. United States, 82 Fed. Cl. at 538; Northrop Grumman Corp. v. United States, 50 Fed. Cl. 443, 468 (2001) (requiring intent to make a misstatement for the misstatement to be considered material); Synetics, Inc. v. United States, 45 Fed. Cl. at 16 ("intentional misrepresentation occurs when a party makes a 'false statement of a substantive fact . . . [that] leads to a belief of a substantive fact material to proper

understanding of the matter in hand, *made with intent to deceive or mislead*.'" (quoting Black's Law Dictionary 1001 (6th ed. 1990))) (emphasis and alternations added in <u>Synetics</u>).

Protestor alleges that AWS made an intentional, material misrepresentation when it included in its proposal a copy of the addendum to its Special Use Permit application, wherein AWS represented to the Zoning Commission and the City Council that the residents at its proposed facility would be nonviolent, non-sex offenders and that it had the authority to choose which referrals it would accept.[8] Protestor alleges that because the solicitation required accommodation of all referrals,[9] AWS's statements to the City Council and Zoning Commission in the addendum to its Special Use Permit application and at the May 29, 2012 City Council meeting regarding its intention to house only white-collar criminals must have been intentionally false statements. Defendant and intervenor disagree, arguing that the errors were inadvertent, and should not be considered material misrepresentations. Although AWS acknowledges making the incorrect statements, AWS had stated earlier in its initial proposal submitted to the BOP that it would "accept all referrals made by the BOP." Moreover, according to the City Council, the statements concerning the type of offender to be housed at the facility were not relied upon by the City Council when it approved the zoning request and AWS did attempt to correct the record with the City Council.

In response to Discussion Notice #1, which stated that AWS's representations were at odds with the requirements of the RFP, on August 7, 2012, AWS attempted to correct the record by sending an e-mail to Mr. Harmon, a senior planner from the Fayetteville Planning and Zoning Division, Planning Department, informing him of the actual requirements in the solicitation's Statement of Work. Although received after the City Council voted, Mr. Harmon replied on August 8, 2012 and stated, "[t]he Council's approval was based on the 8 to 2 in favor of the zoning vote from the hearing. The approval was not based on any reference to 'white-collar' or type of offenders being placed there." BOP subsequently noted in its evaluations that AWS adequately notified the City Council that all offenders could be placed in the facility and the zoning permit was not contingent on a restricted offender population being served at the facility. In the source selection decision, the contracting officer determined:

---

[8] Protestor also alleges a material misrepresentation was made by Ms. Andrews on behalf of AWS at the May 29, 2012 City Council meeting when she stated that offenders at the facility would not be violent or sex-offenders.

[9] Given that Bannum's protest is based, in part, on its allegation that AWS had not committed to accepting all offenders, as required by the solicitation, it is interesting to note that the agency went through several rounds of discussions with Bannum regarding whether Bannum had committed to accept high risk inmates, including sex-offenders, with the agency repeatedly suggesting Bannum's responses were vague and inconclusive.

> Although **AWS'** application for the Special Use Permit included a statement that the "clientele are federal, white collar nonviolent offenders who are re-acclimating to society," which is not correct, subsequently the city provided documentation that 1) the city council was adequately notified all types of offenders would be accepted, and 2) zoning was not contingent upon any type of offender being placed in the facility. The proof of zoning is acceptable.

(emphasis in original). Defendant represents that Mr. Harmon possessed the requisite authority to serve as the contact person for purposes of providing notice to the local government of the RFP's requirements. Mr. Harmon served as AWS's contact at the City of Fayetteville throughout the zoning application process and was the official who presented the AWS application to the City Council. Although protestor disputes the adequacy of Mr. Harmon's authority, it has failed to offer contrary evidence that the communication with Mr. Harmon was an inadequate means of clarifying the requirements of the solicitation to the City of Fayetteville for purposes of validating AWS's zoning permit. Furthermore, to the extent BOP erred in relying on the communication with Mr. Harmon, protestor was not prejudiced, because protestor also utilized correspondence from a member of the Fayetteville Planning and Zoning Division, not the City Council, to prove that its zoning was adequate.

Protestor also argues that AWS failed to maintain proper zoning in violation of the solicitation. Protestor argues that in order to maintain proper zoning, under City of Fayetteville Code (Fayetteville Code) section 30-2.C.7(d)(8)(a), the intervenor was required to obtain a Building Permit within one year of obtaining the Special Use Permit, and that AWS did not receive such a Building Permit. Without a Building Permit, protestor contends, AWS's Special Use Permit became invalid. According to the protestor, without a valid Special Use Permit, AWS was not in compliance with Fayetteville's zoning requirements and not in compliance with the solicitation's requirements. Fayetteville Code section 30-2.C.7(d)(8)(a) provides:

    i.   The City Council may prescribe a time limit within which a Building Permit for the development authorized by a Special Use Permit shall be obtained. Failure to obtain a Building Permit within the specified time limit shall void the Special Use Permit.

    ii.   Unless specified otherwise by the City Council, a Special Use Permit shall automatically expire if a Building Permit for the development authorized by the Special Use Permit is not obtained within one year after the date of issuance of the Special Use Permit, or if the development authorized by the Special Use Permit is discontinued and not resumed for a period of one year.

Fayetteville Code § 30-2.C.7(d)(8)(a).

The disagreement among the parties with respect to whether AWS's Special Use Permit expired includes considering whether a Building Permit must be obtained under all circumstances in order to maintain the validity of the Special Use Permit which had been obtained. Drawing guiding principles from the rules of statutory construction to try to interpret the words of the Fayetteville Code, it is the court's duty, if possible, to give meaning to every clause and word of the enactment. See Alaska Dep't of Envtl. Conservation v. EPA, 540 U.S. 461, 489 n.13 (2004) ("It is, moreover, "'a cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or otherwise insignificant."'" (quoting TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (quoting Duncan v. Walker, 533 U.S. 167, 174 (2001)))); Williams v. Taylor, 529 U.S. 362, 404 (2000) (describing as a "cardinal principle of statutory construction" the rule that every clause and word of a statute must be given effect if possible); see also Setser v. United States, 132 S. Ct. 1463, 1470 (2012) ("Our decision today follows the interpretive rule they invoke, that we must 'give effect . . . to every clause and word' of the Act." (omission in original) (quoting United States v. Menasche, 348 U.S. 528, 538–39 (1955))); Mitchell v. Merit Sys. Prot. Bd., 741 F.3d 81, 84 (Fed. Cir. 2014); Sharp v. United States, 580 F.3d 1234, 1238 (Fed. Cir. 2009). Similarly, the court should avoid an interpretation of a clause or word which renders other provisions of the statute inconsistent, meaningless, or superfluous. See Duncan v. Walker, 533 U.S. at 174.

In order to understand the cited provision of the Fayetteville Code section 30-2.C.7(d)(8)(a), the court looks to the language of the provision and the surrounding sections and definitions. The purpose of the Special Use Permit is described in Fayetteville Code section 30-2.C.7(a) and (b):

> A use designated as a special use in a particular zoning district is one that may be appropriate in the district, but because of its nature, extent, and external effects, requires special consideration of its location, design, and methods of operation before it can be deemed appropriate in the district and compatible with its surroundings. The purpose of this section is to establish procedures and standards for review and approval of Special Use Permits that provide for such special consideration.

Fayetteville Code § 30-2.C.7(a). Fayetteville Code section 30-2.C.7(b) states: "A Special Use Permit is required for development of any use designated in Table 30-4.A, Use Table, as a special use in the zoning district where proposed." Fayetteville Code § 30-2.C.7(b).

Additionally, in relevant part, the Fayetteville Code provides: "If the application is approved, the City Manager shall prepare a Special Use Permit identifying the site and approved plans and documents and listing any conditions of approval, and shall issue the permit to the applicant." Fayetteville Code § 30-2.C.7(d)(7). "Use" is defined as: "The purpose for which a building, lot, sign or structure is intended, designed, occupied or maintained." Fayetteville Code § 30-9.D. "Special Use Permit" is also defined in the definitions section as: "A permit for construction reviewed and approved, approved with

conditions, or denied by the City Council in accordance with Section 30-2.C.7, Special Use Permit." Fayetteville Code § 30-9.D. The definition of Special Use Permit in Fayetteville Code section 30-9.D, therefore, appears to describe a permit for construction.

Also relevant, the Fayetteville Code further provides:

Building Permits are approved and issued by the City Manager in accordance with Section 160A-417 of the North Carolina General Statutes and the North Carolina State Building Code. The Building Permit is intended to certify that the proposed construction, moving, alteration, or repair of structures complies with the construction standards in the State Building Code and with all other applicable state and local laws—including this Ordinance. The Building Permit thus serves as a method to check and verify a structure's compliance with the requirements of this Ordinance.

Fayetteville Code § 30-2.C.12(a). Therefore, it appears that the phrase "Special Use Permit" may be employed somewhat differently in various sections of the Fayetteville Code, with Fayetteville Code section 30-9.D, referring to a construction permit, while other sections, such as Fayetteville Code section 30-2.C.7(a) and (b), applying the phrase "Special Use Permit" more broadly.

At the time AWS applied for the Special Use Permit, it applied for a permit for a "use designated as a special use in a particular zoning district . . . that may be appropriate in the district, but because of its nature, extent, and external effects, requires special consideration of its location, design, and methods of operation before it can be deemed appropriate in the district and compatible with its surroundings." Prior to award, AWS had received the Special Use Permit required under the solicitation. Although AWS may be required to obtain a Building Permit, depending on the nature of any work which will have to be done to ready the building for the BOP contract, that remains to be determined in the future. Defendant and intervenor maintain that no Building Permit is required even under local requirements and that if a Building Permit is required, this is not the proper forum to challenge intervenor's alleged lack of a Building Permit. A brief review of section 30.2.C.12 of the Fayetteville Code describes the general outlines of the "procedures applicable to the review and approval of applications for Building Permits," but, given the fact-specific and uncertain nature of any proposed work, does not offer specific insight as to whether AWS will be required to obtain such a permit. Nor has protestor offered specific information to demonstrate that AWS requires a Building Permit if awarded the contract. Defendant also is correct that such a request is an issue of performance, not a basis for protest challenging selection of the winning bidder. As defendant also points out, when AWS submitted its bid, it signed without taking exception to the requirements of the solicitation and agreed to all terms, including the requirement to maintain proper zoning throughout the life of the contract. Because protestor has not demonstrated that AWS was required to obtain a Building Permit in order to obtain or maintain its valid Special Use Permit, protestor has failed to demonstrate that AWS allowed its zoning approval to lapse.

Furthermore, even if AWS is required by the Fayetteville Code to obtain a Building Permit, despite its claim it need not do so, BOP would not have been required to eliminate AWS from the competitive range. As discussed above, the solicitation states that "[a]n offeror's failure to establish and maintain proof [of zoning] <u>may</u> result in elimina-tion [sic] prior to award and termination for default following award." (emphasis added). BOP retained discretion with respect to decisions regarding selection of an offeror's proposal despite potential zoning deficiencies. Because the agency was not required to eliminate an offeror for failure to maintain proof of zoning, the agency did not abuse its discretion in this case. After reviewing the record, including all the briefs filed and the oral arguments, the agency, as described by intervenor's counsel, undoubtedly did a "weird dance" with respect to this solicitation, but the award decision was not an abuse of the agency's discretion.

## CONCLUSION

As determined above, protestor has not demonstrated that the agency abused its discretion. As a result, protestor's motion for judgment on the administrative record is **DENIED**, and defendant's and intervenor's motions for judgment on the administrative record are **GRANTED**. Protestor's complaint is **DISMISSED**. The Clerk of Court shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**